# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JACKSON STUBBS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 05-0923-CV-W-FJG |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant's Motion for Summary Judgment (Doc. # 66), defendant's Motion to Quash Exhibits Two and Twenty (Doc. # 77) and defendant's Motion in Limine (Doc. # 108).

### I. BACKGROUND

Plaintiff began working at the Ford Assembly Plant as an hourly employee on March 30, 1994. In April 1996, he was promoted to the position of Supervisor, a salaried position in the SUV Trim Department. In 1998, he received a promotion and became a Supervisor in the SUV Chassis Department. In June 1999, he was promoted to the position of manufacturing planning specialist, which is also a salaried position, in the SUV Paint Department. In March 2001, he was promoted to the position of Superintendent. For 2001 and 2002 plaintiff received the rating of Achiever. There is a three-tiered rating scale for Superintendents: Improvement Required, Achiever and Top Achiever. In March 2003, plaintiff was transferred to the SUV Chassis Department as a Superintendent. Beginning in 2002 and continuing through February 2003, plaintiff was counseled on several occasions about his performance.

On October 1, 2003, Ford changed the overtime policy for salaried employees, in that it no longer paid exempt employees for overtime worked beyond the ten hour production schedule. After the change, plaintiff sent three emails to Ford's corporate headquarters in the fall of 2003 complaining about the change. He also put comments regarding the policy in communications from the Night Shift to the Day Shift. However, plaintiff never mentioned that he thought the change was illegal or in violation of the FLSA. In 2004 and 2005, he also sent emails to management employees and an employee in the HR department about the change, but again he just complained about the hours he worked and the antiquated equipment, but he did not state that he thought the change was illegal or in violation of the statute. In December 2003, plaintiff was counseled again regarding his poor performance. Plaintiff believes that this counseling was retaliation. He received the same rating that he had in 2001 and 2002 - Achiever. In 2004, plaintiff was again counseled because his department failed to meet its production goals, and he failed to complete assigned tasks or to provide information to the satisfaction of his supervisor. In February 2004, plaintiff was given the option of either stepping down as a Superintendent or being placed on a performance improvement plan, which meant he could face discharge. Five other management employees were given the same option. Plaintiff chose to step down to the position of Supervisor. Even though he voluntarily chose to step down and his salary remained the same, plaintiff believes that this "demotion" was in retaliation for allegedly complaining about the overtime policy. In 2004 and 2005, plaintiff sent emails to other Ford employees complaining about the policy. But again, he did not state that he thought the policy was illegal. In 2004, plaintiff received the rating of "Excellent" and received the rating of "Satisfactory Plus" for 2005 and 2006. Plaintiff is currently still employed by

Ford as a Supervisor.

On October 4, 2005, plaintiff filed a six count Complaint against defendant alleging the following: Count I - Violation of Fair Labor Standards Act; Count II- Retaliation in violation of Fair Labor Standards Act; Count III-Breach of Contract; Count IV-Reliance/Promissory Estoppel; Count V-Unjust Enrichment; Count VI-Breach of Contract - Refusing to Provide Compensatory Time.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. Motion to Quash

Defendant has moved to quash two exhibits which plaintiff included as exhibits to his summary judgment motion because these documents were marked confidential during discovery. Plaintiff responded that he did not believe the documents were confidential and asks that instead of striking the documents that they be filed under seal. Defendant responds that if plaintiff had a question regarding whether the documents were confidential, he should have raised it before including the documents in his exhibits. Defendant asks that sanctions be imposed and that Ford be awarded its attorney fees. The Court does not find that the inclusion of these documents was done with a purposeful intent to violate the Protective Order. There were a voluminous amount of exhibits produced by both sides. Therefore, the Court hereby **DENIES** the Motion to Quash and instead **ORDERS** that the documents be removed from the ECF system and instead be filed under seal. The Court also denies the request for sanctions or attorneys fees.

### B. Fair Labor Standards Act - Count I

The FLSA requires employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a)(2). However, executive, administrative and professional employees are exempt from the overtime compensation requirements. 29 U.S.C. § 213(a)(1). A common criterion for exempt employees is that they are salaried employees. Plaintiff was and continues to be a salaried employee. "Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law." Jarrett v. ERC Properties, 211 F.3d 1078 (8th Cir.

4

2000). Under the FLSA, if an employee earns more than $455 per week, there is a short test to determine if they are exempt. See 29 C.F.R. § 541.1(f). Under the short test, an exempt executive employee is someone: (1) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; and (2) [w]ho customarily and regularly directs the work of two or more other employees and (3) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100 (a). Ford argues that because plaintiff fits all the criteria, he is an exempt employee.

Plaintiff states only that whether he is an exempt employee is a fact question that is inappropriate for summary judgment and that defendant has not put forth sufficient facts to support summary judgment. Plaintiff states that summary judgment is not appropriate based on defendant's citation to a portion of his deposition in which he mis-stated the term used to describe individuals who are eligible to earn overtime. But, plaintiff does not explain or argue why the test would not apply to him or why defendant's facts do not fit the test.

Plaintiff did not dispute that under the FLSA the short test applies because he earned more than $455/ hour. Neither did plaintiff dispute that as a Superintendent, he managed eight Supervisors and directed the work of other employees. As Superintendent, he counseled his Supervisors and coached and mentored them. Plaintiff also recommended employees for termination and promotion within the company. Thus, because there is no dispute regarding these issues, the Court finds that plaintiff meets the test for an executive employee and thus is not entitled to

5

2000). Under the FLSA, if an employee earns more than $455 per week, there is a short test to determine if they are exempt. See 29 C.F.R. § 541.1(f). Under the short test, an exempt executive employee is someone: (1) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; and (2) [w]ho customarily and regularly directs the work of two or more other employees and (3) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100 (a). Ford argues that because plaintiff fits all the criteria, he is an exempt employee.

Plaintiff states only that whether he is an exempt employee is a fact question that is inappropriate for summary judgment and that defendant has not put forth sufficient facts to support summary judgment. Plaintiff states that summary judgment is not appropriate based on defendant's citation to a portion of his deposition in which he mis-stated the term used to describe individuals who are eligible to earn overtime. But, plaintiff does not explain or argue why the test would not apply to him or why defendant's facts do not fit the test.

Plaintiff did not dispute that under the FLSA the short test applies because he earned more than $455/ hour. Neither did plaintiff dispute that as a Superintendent, he managed eight Supervisors and directed the work of other employees. As Superintendent, he counseled his Supervisors and coached and mentored them. Plaintiff also recommended employees for termination and promotion within the company. Thus, because there is no dispute regarding these issues, the Court finds that plaintiff meets the test for an executive employee and thus is not entitled to

5

compensation for overtime worked under the FLSA.

### C. Breach of Contract Claims - (Counts III and VI)

Ford argues first that plaintiff's contract and quasi-contract claims are preempted by the FLSA, which establishes a complete range of remedies to employees who can establish a claim under the FLSA. Additionally, Ford argues that these claims also fail because plaintiff was an at-will employee, who had no written employment contract. Ford states that plaintiff admits that he neither signed or saw any document that stated anything about the duration of his employment. He admits that there was no written document promising him overtime pay or compensatory time. Since no express contract was executed by the parties for his employment, overtime pay or compensatory time, Ford argues that there can be no breach of a non-existent contract.

Plaintiff argues in response that the Eighth Circuit has not determined that contract claims are preempted by the FLSA. With regard to the other claims, plaintiff argues that he has been continuously employed at Ford and thus should always have been receiving overtime pay and that disputed fact issues prevent summary judgment on this claim. However, plaintiff does not identify what the disputed fact issues are. With regard to Count VI - Refusing to Provide Compensatory Time, plaintiff argues that such compensatory time is required under the terms of the new Ford policy since September 2003.

As defendant has noted, the Eighth Circuit has not yet spoken on the issue of whether the FLSA preempts state law contract claims. As the issue appears to be undecided in this Circuit, the Court will not decide these claims on that basis. Alternatively, Ford argues that plaintiff's breach of contract claims fail because he was an at-will employee. In <u>Baum v. Helget Gas Products, Inc.</u>, 440 F.3d 1019 (8th Cir.

6

Case 4:05-cv-00923-FJG   Document 121   Filed 03/31/08   Page 6 of 16

2006), the Court stated:

> Under Missouri law, in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason. . . . Unless the contract specifies the duration of employment or limits the reasons for discharge, either party may terminate the employment relationship at any time, with no liability for breach of contract.

Id. at 1022 (internal citations and quotations omitted).

On March 19, 1996, plaintiff signed an employment agreement that stated in part:

> I understand that my employment is not for any definite term, and may be terminated at any time without advance notice, with or without cause, by either myself or my employer at the will of either. I agree to conform to such personnel practices, procedures and policies, and changes therein, as my employer may from time to time adopt, and that my employment shall be subject to such layoffs, and my pay and benefits to such adjustments as my employer may from time to time determine.

The employment agreement also states:

> I acknowledge that the terms contained herein are the entire terms of my employment, that personnel practices, procedures and policies of my employer shall not change my employment from one terminable at will, that there are no other arrangements, agreements, or understandings, *oral or in writing*, regarding my present or future employment with Ford Motor Company or any of its subsidiaries, and that any purported arrangements, agreements or understandings made in the future shall not be valid unless evidenced by a writing signed by me and the vice president responsible for employee relations.

Plaintiff admitted in his deposition that he did not have any documents signed by a Vice President which guaranteed him either employment or overtime. He also admits that he has no documents or written contracts in which Ford guaranteed to pay him overtime during his tenure. His belief that Ford should have paid him overtime as a Superintendent is based solely on oral promises that plaintiff alleges were made to him. Because plaintiff was an at-will employee and because there was no written agreement promising to pay plaintiff overtime, Ford had no obligation to either retain plaintiff or to

continue paying him overtime or compensatory time. Accordingly, the Court finds that Ford is entitled to summary judgment on plaintiff's Breach of Contract Claims (Counts III and VI).

**D. Reliance/Promissory Estoppel/Unjust Enrichment - Counts IV and V**

> A claim for promissory estoppel requires: (1) a promise, (2) detrimental reliance on that promise by plaintiff, (3) that defendant could have reasonably foreseen the action plaintiff took in reliance, and (4) injustice can be avoided only by enforcement of the promise. . . . Missouri case law unequivocally states that, absent a statutorily prohibited reason for discharge, the employer remains free to fire any employee-at-will for any reason. . . .Thus, a former at-will employee cannot recover from a former employer on theory of promissory estoppel, because no promise was broken in the employee's discharge. . . . Even in <u>Bower [v. AT&T Technologies</u>, 852 F.2d 361 (8th Cir. 1988)], the court noted that once an employee has been hired, the employer has complied fully with its obligation and may discharge the employee *or change the terms of employment. . .* Finally, in Missouri the doctrine of promissory estoppel is resorted to in extreme cases and only to avoid unjust results.

<u>Riley v. Lance, Inc.</u>, No.05-0520-CV-W-DW, 2006 WL 2711611, *4 (W.D.Mo. Sept. 21, 2006), <u>aff'd</u>, 2008 WL 732003 (8th Cir. 2008)(internal citations omitted)(emphasis added).

Again, because plaintiff was an at-will employee and because the employment agreement specifically stated that Ford could make changes in plaintiff's pay and benefits, he cannot state a claim for promissory estoppel.

With regard to plaintiff's claim of unjust enrichment, the Court in <u>S & J Incorporated v. McLoud & Co. L.L.C.</u>, 108 S.W.3d 765 (Mo.App. 2003), stated:

> An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which retention of the benefit, without paying its reasonable value, would be unjust. . . . The right to restitution for unjust enrichment presupposes: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit. . . . The most significant of the elements for a claim of unjust enrichment is the last element, which is the requirement that the

8

>enrichment of the defendant be unjust. . . . In determining whether it would
>be unjust for the defendant to retain the benefit, courts consider whether
>any wrongful conduct by the defendant contributed to the plaintiff's
>disadvantage.

Id. at 768 (internal citations omitted). In the instant case, plaintiff's claim for unjust enrichment also fails because Ford was not enriched at plaintiff's expense. Ford paid plaintiff according to its policies. Additionally, there was nothing wrongful about Ford's decision to change the policy or in how the policy was applied to plaintiff. Accordingly, the Court finds that Ford is also entitled to summary judgment on plaintiff's Reliance/Promissory Estoppel Claim (Count IV) and plaintiff's Unjust Enrichment Claim (Count V).

**E. Retaliation Claim - Count II**

Ford argues that plaintiff cannot establish a prima facie case of retaliation. There are three elements to a prima facie retaliation claim: "[1]the plaintiff must demonstrate that he or she took part in protected conduct, [2] that he or she was subjected to an adverse employment action, and [3] that there exists a causal nexus between the protected conduct and the adverse action. . . . The plaintiff's burden at the prima facie case stage of the analysis is not onerous, and [a] minimal evidentiary showing will satisfy this burden of production." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1119 (8th Cir. 2006)(internal citations and quotations omitted).

**1. Protected Conduct**

Plaintiff claims that he engaged in protected conduct when he sent an email to the top management at Ford's Home Office in Detroit on August 28, 2003. Plaintiff then forwarded this email to Dave Savchetz, the Kansas City Plant Manager. Plaintiff also alleges that he engaged in protected activity when he made comments in the Night

Letters. These are communications from the previous evening's shift that are left for the day shift. In these reports, plaintiff's made comments such as "supervisors asking if we could improve more by giving more money back to the company" and "supervisor certain there will be more pay cuts." Plaintiff also claims that other acts of protected conduct occurred when he sent emails on 9/23/03 and10/1/03 to Detroit upper management. He also sent an email on 9/3/04 to Kansas City management member Paul Nardozzi. Plaintiff claims another incident of protected conduct on 2/3/05 when he sent an email to Kansas City HR personnel Lori Strohl. Plaintiff claims other incidents of protected activity on 3/3/05, May 2005, 5/18/05, 6/8/05 and 7/26/05.

Ford argues that these are not incidents of protected activity because in none of his communications does plaintiff ever state or intimate that the change in overtime was illegal, against the law or in violation of the FLSA. Ford argues that plaintiff is merely complaining about the policy or making sarcastic comments about it. Ford argues that mere "abstract grumblings" are not enough under the case law to establish protected conduct.

> The FLSA states that it shall be unlawful for any person to:
>
> discharge or in any other manner discriminate against any employee
> because such employee has filed any complaint or instituted or caused to
> be instituted any proceeding under or related to this chapter, or has
> testified or is about to testify in any such proceeding, or has served or is
> about to serve on an industry committee . . ..

29 U.S.C. § 215(a)(3). In the instant case, plaintiff did not file any formal complaint regarding the change in the overtime policy nor did he institute any formal proceedings challenging the action. However, he did make several complaints to various officials at Ford, both at the local level and also at the corporate headquarters. The Eighth Circuit has determined that even an informal or internal complaint to the employer qualifies as

a complaint within the meaning of the statute. However, courts have also recognized that "not all amorphous expressions of discontent related to wages and hours constitute [a] complaint filed within the meaning of § 215(a)(3)." Lambert v. Ackerley, 180 F.3d 997, 1007 (9th Cir. 1999), cert. denied, 528 U.S. 1116 (2000). Courts have found that the employee must assert their statutory rights and argue that the action that their employer is taking *is illegal*. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 262 (1st Cir. 1999)(a complaint is not protected because it did not allege violations of any law); Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995)("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination."); Thomas v. Ragland, 324 F.Supp.2d 950, 971-972 (W.D.Wis. 2004)(a complaint about inappropriate behavior, if it does not allege illegal action, is not protected). In Cook v. CTC Communications Corp., No. 06-CV-58-JD, 2007 WL 3284337 (D.N.H. Oct. 30, 2007), the Court stated:

> [T]he hallmark of protected activity under [FLSA] is asserting statutory rights by taking some action adverse to the company. . . .The requirement of stepping outside a normal role is satisfied by a showing that the employee took some action against a . . . policy . . . and that the action was based on a reasonable belief that the employer engaged in . . . conduct contrary to the FLSA.

Id. at *6 (internal citations and quotations omitted).

In reviewing the various emails that plaintiff sent, he does not assert that the change in policy is a violation of the statute. For example, in his August 28, 2003 email to Jim Padilla, he states:

> My problem is this: With the current restructuring of the pay I am receiving from the company there are several employees who have less responsible positions that will be compensated at a higher level than I am. . . . I realize these are trying times for the Company but removing incentive and taking pay from the very individuals who are the most dedicated and hard working seems to be a poor solution that will only serve to create more

problems for the Company as we struggle to recover. . . . I am extremely disappointed in Ford Motor Company at this time for taking an action that shows little concern or consideration for some of the most dedicated employees I have ever had the pleasure with which to work. I respectfully request that this action be reconsidered!

Again on September 23, 2003 in another email to Jim Padilla, plaintiff states:

I was wondering how Ford Motor Company can justify it's position regarding the restructuring of the salaries of it's supervisors when the Union Contract appears to be quite beneficial for the hourly employees? . . . How can the company claim financial hardship and take money away from the dedicated, hard working Salaried employees and turn around 3 weeks later and give the Union such a lucrative contract?? I am very curious to hear your position regarding this issue. Seem like a hard one to justify from where I'm sitting.

Again, in an email to William Dirksen on October 1, 2003, plaintiff states:

When I signed up to take the positions I have taken it was with the clear understanding that I would get paid for my over time. Now I am EXPECTED to work the same hours which is 12 or 13 plus hours a day for the 40 hour work week BASE salary. NO arrangements have been made for comp time. . . .Now, if you want to revise my over time status as you have then we need to renegotiate my base salary. If I agree to new terms then I will live with the bargain I make. In conclusion, I feel no less violated than if someone came into my house and stole something from me than I currently do. It is of no comfort for me that this action is being taken under the realm of "corporate restructuring or policy." This, simply put, is NOT what I signed on or agreed to do.

There are several other letters and communications from plaintiff, but in none of his letters or emails does he allege that the change in policy was illegal or that it violated the FLSA. Rather, the Court finds that these incidents are simply "abstract grumblings" and do not qualify as protected conduct under the FLSA.

**F. Adverse Employment Action**

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. . . . Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future

12

Case 4:05-cv-00923-FJG   Document 121   Filed 03/31/08   Page 12 of 16

career prospects meet this standard. . . . but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not. . . ." Spears v. Mo. Dept. Of Corrections, 210 F.3d 850, 853 (8th Cir. 2000).

Plaintiff claims that he suffered the following adverse actions: 1) forced to take a demotion; 2) subjected to severe and pervasive hostile work environment; 3) required to work even longer hours and not paid the overtime others were still being paid; 4) given false and retaliatory down-graded performance evaluations; 5) threatened with termination; 6) denied transfers; 7) denied vacations, 8) denied career advancement and promotion, and 9) not allowed to attend a meeting with a top Ford executive.

In response, defendant states that longer hours or increases in workload do not constitute adverse employment actions because they are not tangible changes in an employee's duties or working conditions. Defendant also states that plaintiff testified that he did not mind taking on some additional duties and that he did not complain about these additional duties. Ford states that being threatened with termination is not an adverse employment action. With regard to the demotion, Ford states that plaintiff requested it and voluntarily stepped down from his position as Superintendent and he was never required to take the demotion. With regard to the false performance reviews, Ford states that plaintiff has failed to provide anything except his own testimony to support this proposition. Ford states that even assuming they were false, there is no evidence that it was used to alter the terms or conditions of his employment. Ford states that plaintiff received substantially similar performance reviews both before and after the overtime policy change. As for the request for vacation time, plaintiff admits that no one was allowed vacation time the weekend that he requested off. As to his claim that he was denied promotions and transfers, Ford states that plaintiff admits that

13

he never requested a transfer or applied for a promotional or advancement opportunities. As to the hostile work environment, Ford states that cursing and yelling at someone is not a sufficiently hostile work environment. As to the claim that he was not invited to a meeting with a Ford executive, Ford states that plaintiff worked the night shift and only day shift employees were invited. Plaintiff continues to be employed by Ford as a Supervisor.

With regard to the demotion, the evidence shows that plaintiff had a choice, he could either take the demotion or be placed on a performance improvement plan. Even with the demotion, plaintiff's salary did not decrease. Thus, the Court finds that this was not an adverse employment action. As to the hostile work environment claim, plaintiff claims that he was subjected to cursing and yelling by Savchetz, the Plant Manager. However, cursing and yelling alone is not enough to establish a hostile work environment. "The conduct at issue 'must be extreme and not merely rude or unpleasant.'" Arzuman v. Mo. Dept. Of Natural Resources, No. 2:06-CV-04015-NKL, 2007 WL 1577648, *6, (W.D.Mo. May 31, 2007) quoting LeGrand v. Area Resources for Community & Human Servs., 394 F.3d 1098, 1101 (8th Cir. 2005), cert. denied, 546 U.S. 813 (2005). Plaintiff has not presented any evidence that Savchetz's yelling or cursing reached extreme levels or that there was conduct other than this. Thus, the Court does not find that this is an adverse employment action. With regard to the claim that he had to work longer hours and was not paid the same overtime as others. Plaintiff admitted in his deposition that he did not mind filling in for the general foreman and that he never complained that he should have been paid more for this work and did not let anyone know that he thought it was unfair that he was not paid more. Thus, this also is not an adverse employment action. As to plaintiff's claim that he was given false and

retaliatory down-graded performance reviews, even assuming this were true, there is no evidence that these reviews were used to alter the terms or conditions of plaintiff's employment. In Higgins v. Gonzales, 481 F.3d 578, 586 (8th Cir. 2007), the Court considered whether false complaints could constitute an adverse employment action. The Court stated, "[e]ven if there was evidence the complaints were false and retaliatory, Higgins does not allege they led to a material change in her employment status. The record shows no negative consequence to her because of these complaints. As such, they cannot constitute an adverse employment action." The Court agrees and finds that in the instant case there also is no evidence that plaintiff's performance reviews led to a material change in his employment status. Threats of termination also do not constitute adverse employment actions. See Mowbray v. American General Life Companies, 162 Fed.Appx. 369, 374 (5th Cir.), cert. denied, 126 S.Ct. 2985 (2006). With regard to his claim that he was denied transfers and promotions. Plaintiff admitted in his deposition that since he was demoted, he has not specifically requested a promotion. He claims that others have requested that he be their general foreman, but he has not requested it or sought it out. Thus, this also does not qualify as an adverse employment action. With regard to the denial of vacation time, plaintiff admits that in fact, no one was given the time off and in fact everyone in the department was required to work on that holiday. Finally, as to the claim that he was denied the opportunity to attend a meeting at Ford during which Mr. Padilla was to speak in September 2003, Ford states that only day shift employees were invited and plaintiff was not invited because he worked the night shift. The Court does not find that this constitutes an adverse employment action as it did not affect plaintiff's pay or benefits in any way. Also, plaintiff was not prevented from contacting Mr. Padilla, as he

15

sent him multiple emails. Accordingly, the Court does not find that any of the actions alleged by plaintiff constitute an adverse employment action. As the Court has determined that plaintiff did not engage in any protected conduct and did not suffer any adverse employment action, the Court finds that plaintiff has failed to state a prima facie case of retaliation. Accordingly, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Count II.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** defendant's Motion for Summary Judgment (Doc. # 66), **DENIES** defendant's Motion to Quash Exhibits Two and Twenty (Doc. # 77) and **DENIES AS MOOT** defendant's Motion in Limine (Doc. # 108).


Date: 3/31/08　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　Chief United States District Judge